United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO RENE PEREZ,<br>Petitioner,<br>vs.<br>K. ALLISON, Warden,<br>Respondent. | No. C 10-05947 EJD (PR)<br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction from Contra Costa County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## BACKGROUND

In July 2008, Petitioner was found guilty by a jury of three counts of child molestation, (Pen. Code § 288(b)(1)),[1] each with a different victim. Petitioner was sentenced to three consecutive terms of 15 years to life, for a total of 45 years to life in state prison.

---

[1] All further unspecified statutory references are to the California Penal Code.

United States District Court
For the Northern District of California

On direct appeal, the state appellate court affirmed the conviction on February 24, 2010. The state high court denied review on June 9, 2010. Petitioner filed the instant federal habeas petition on July 21, 2011.

## FACTUAL BACKGROUND

The following facts are taken from the opinion of the California Court of Appeal:

> I. *Convictions and Sentence*
>
> An information charged [Petitioner] with four counts of committing a lewd or lascivious act on a child by force or fear in violation of Penal Code section 288, subdivision (b)(1). [FN1] Each of the four charges named a different victim. The information alleged with regard to each count that [Petitioner] fell under the alternative, and more severe, punishment scheme set forth in the "One Strike" law (§ 667.61, subds. (b), (e)).
>
> FN1. All further statutory references are to the Penal Code.
>
> Of importance to [Petitioner]'s appeal, the information alleged, with regard to counts one and four, that [Petitioner] violated section 288, subdivision (b)(1), between January 1, 1995, and September 1, 1996.
>
> A jury convicted [Petitioner] on counts 1, 2, and 4, and found true the section 667.61 allegation appurtenant to each count. The jury found [Petitioner] not guilty on count 3 and not guilty on one lesser-included offense to count 3, but could not agree on his guilt regarding another lesser-included offense to that count. The court dismissed prosecution for the unresolved lesser-included offense to count 3 in the interest of justice. [Petitioner] received a sentence of 45 years to life in state prison.
>
> II. *Facts*
>
> A. *Count 1*
>
> The victim in count 1 lived in a San Jose apartment with her father and [Petitioner]. One day, when the victim was five or six years old, [Petitioner] rubbed the victim's vagina over her clothes. The victim was scared and felt "weird and awkward." Similar behavior occurred several times. On one occasion [Petitioner] gave the victim a look that she interpreted as a warning not to resist by moving.
>
> B. *Count 2*
>
> Count 2 involved a different victim. [Petitioner] was living

United States District Court
For the Northern District of California

with the victim's grandmother and the victim, a girl who was approximately nine or 10 years old. The victim and [Petitioner] were alone at home when she entered the adult couple's bedroom. She took or prepared to take some spare change that was in or on a desk in the bedroom and told [Petitioner] not to tell on her. [FN2] He replied that he would not do so but, in exchange, he asked her to perform sexual acts for him. He drew the blinds and asked her to get on top of him and kiss his neck. The victim was reluctant, but [Petitioner] persisted and warned her that he would tell her grandmother about the money if she did not comply. She feared being reported and acceded to his request, but without wanting to. The activity made her feel "[w]eird" and she answered "[y]es" when the prosecutor asked if she was "scared" at the time. She straddled [Petitioner] and kissed his neck. At some point, [Petitioner] got on top of the victim, but the victim's trial testimony and prior statements provided no details regarding this act. The episode ended when the victim went to her own bedroom and went to sleep.

FN2. The testimony about the money came from the victim's acknowledgment at trial of a prior description she made of these events and testimony by a police officer who had taken the victim's statement regarding them. At trial the victim testified that she had lied to the officer; denied stealing money from the bedroom, testifying that she entered the bedroom only to obtain a pencil; and denied or could not remember aspects of her interaction with [Petitioner] on that occasion, particularly certain aspects of a sexual nature.

C. *Count 4*

Count 4 involved yet another different victim, the sister of the victim in count 1. Like her sister, she lived in the same apartment as [Petitioner]. When she was eight or nine years old, [Petitioner] would wink and throw kisses to her. Once, when she and [Petitioner] were alone, he inserted a hand inside her pants and fondled her genital area. He also touched her breasts. He warned her that if she told her father, who also lived in the apartment, he would kill him. He engaged in skin-to-skin breast contact on numerous occasions and would kiss her on the face, saying "mi amore" [*sic*] as the victim tried to fend him off. (Italics added). He placed her hand on his penis once. He would masturbate in front of the victim and her sister, the victim in count 1. He gave her a back rub on one occasion that she interpreted as sexual. The victim would regularly resist both physically and verbally but [Petitioner] would overpower her. [Petitioner]'s conduct "would make me feel uncomfortable and ugly, like it was my fault." [FN3]

FN3. We do not describe the facts relating to count 3 [Petitioner] was acquitted on that count and, as described above, no further prosecution took place on a surviving charge of a lesser included offense thereto.

People v. Perez, No. H033386, slip op. at 1-4 (Cal. Ct. App. Feb. 24, 2010) (Ans. Ex. 8).

**DISCUSSION**

I. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 805. Here, that opinion is from the California Court of Appeal.

Recently, the Supreme Court vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

///

///

United States District Court
For the Northern District of California

C. Claims and Analysis

As grounds for federal habeas relief, Petitioner raises the following claims: (1) ineffective assistance of counsel; (2) there was insufficient evidence to establish "the element of menace, fear, and duress" as to count 2; and (3) the conviction based on counts 1 and 4 were the result of "discriminatory enforcement of the law" as they were barred by the statue of limitations, and the convictions thereon violated his right to due process and right to a fair trial. (Second Am. Compl. ("SAC") at 6.)

1. Ineffective Assistance of Counsel

Petitioner's first claim is that counsel rendered ineffective assistance by failing to challenge the admissibility of child sexual abuse accommodation syndrome (CSAAS) evidence offered by the prosecution.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. See id. at 1410-11. The general rule of Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."

United States District Court
For the Northern District of California

Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

The Court of Appeal rejected Petitioner's challenge to the admissibility of the CSAAS evidence and his anticipatory claim that his counsel provided ineffective assistance:

> Defendant claims that the trial court erred under state law in admitting evidence on the subject of so-called child sexual abuse accommodation syndrome, often referred to by its acronym CSAAS. He argues in essence that testimony on this topic is inadmissible as a matter of law. He reasons that child sexual abuse accommodation syndrome has now been shown to amount to "junk science." He maintains that it is based on the false "premise that jurors really believe certain myths, such as that all rape victims do not delay in reporting a rape or that child molesters are gay, alcoholic, shabby old men who linger in play yards, luring unsuspecting children with candy or money."
>
> Defendant moved in limine to exclude child sexual abuse accommodation syndrome testimony as unscientific. The trial court, however, denied the motion, and eventually the jury heard testimony on the topic.
>
> Defendant acknowledges that the child abuse accommodation syndrome testimony admitted in his case "was in accordance with guidelines set forth in applicable current California caselaw." Accordingly, in principle it is not necessary for us to recite the particulars of the child sexual abuse accommodation syndrome testimony presented during the prosecution case. Nevertheless, we will describe relevant aspects of that testimony.
>
> The victim in count 2 gave testimony in court that was inconsistent with her prior statements about [Petitioner]'s molestation of her, and her in-court testimony painted [Petitioner] in a more exculpatory light than did her prior statements. (*Ante*, p. 2, fn. 2.) A senior criminal investigator in the district attorney's office, Carl Lewis, testified that child sexual abuse accommodation syndrom may cause a child to retract her initial allegations of sexual abuse. (Lewis, it should be noted, testified that he is not a psychologist or a psychiatrist.) He testified: "When a child makes a disclosure of sexual abuse,... [t]here is a great deal of chaos brought into the child's life and the child's family's life. Child protective services goes into effect, law enforcement, the criminal justice system, medical and mental health fields, so there is a lot of attention focused on a family as a result of a child's disclosure. [¶] Some

> children might feel on their own that the attention may be [a] little too intense and want to have everything go back to just how it was before. 'I just want things to go back like they were.' Or someone could go to the child and say something like, 'Look at all the trouble you caused because you told. Now I have to take time off from work to take you to appointments to meet people because you told.'... [¶] And the effect of that, that I have seen, is the child who will either minimize the effect of what he or she said earlier[,] maybe saying something like, 'Well, it really wasn't as bad as I said[]' [or] 'It really didn't happen as many times as I said,' as a way of trying to deflect some of the intense pressure. Some kids might take it back entirely and say, 'You know, I was mad when I said it, so I just want to take it back.'"
>
> We reject defendant's challenge to the admissibility of child sexual abuse accommodation syndrome evidence. The record is insufficiently developed to make such a challenge persuasive. It consist of a one-paragraph argument contained in defendant's unsuccessful motion in limine to exclude child sexual abuse accommodation syndrome evidence as unscientific and questions on cross-examination that brought to light the limited value of evidence on that topic. Because of the lack of more substantial record below, defendant cannot offer a persuasive challenge to the admissibility of child sexual abuse accommodation syndrome evidence. [FN5] On appeal, he offers a number of authorities that he asserts support the proposition that such evidence is inadmissible, but we decline to overturn settled law on the basis of arguments presented on appeal with little opportunity for adversarial testing.
>
> FN5. Contrary to the People's argument on appeal, however, we do not discern that defendant has failed to preserve the claim for review. His motion in limine adequately preserved it. There is, therefore, no need to address defendant's anticipatory claim that if we find the claim forfeited then defendant received ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution (see *Strickland v. Washington* (1984) 466 U.S. 668; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)

(Ans. Ex. 8 at 14-16.)

Petitioner's claim is without merit because defense counsel did in fact object to the admissibility of the CSAAS evidence as unscientific in limine. See supra at 7. As the state appellate court found, his objection in limine adequately preserved the claim for review on appeal. Ans. Ex. A at 16, fn. 5. There were no other grounds, and Petitioner does not present any, on which counsel could have successfully moved to exclude the CSAAS evidence. Furthermore, the CSAAS evidence is admissible for certain purposes under federal authority as well, e.g., when it

concerns general characteristics of the victim and not whether victim is telling the truth.[2] Here, the evidence was admitted to revive the credibility of the victim in count 2, who gave inconsistent accounts of the molestation, and not to prove the truth of her statements that Petitioner molested her. Petitioner asserts in his traverse that the case "boiled down to the issues of the credibility of the named victims which was suspect in each case." (Trav. at 4.) The CSAAS evidence was indeed submitted for the very purpose of aiding the jury in assessing the credibility of the victim in light of her inconsistent statements, which is a permitted purpose under state and federal law. Accordingly, it cannot be said that counsel acted below an objectively reasonable standard when he failed to make further objections to the CSAAS evidence which in all likelihood would have been denied.

Furthermore, Petitioner cannot show that he was prejudiced by counsel's conduct. In order to establish prejudice under the second prong of Strickland from failure to file a motion, petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999). Petitioner fails to show the first prong because, as discussed above, a motion to exclude the CSAAS evidence would not have been granted. Furthermore, Petitioner cannot show that he was otherwise prejudiced by the admission of the CSAAS evidence because the trial court instructed the jury with limiting instructions under CALCRIM No. 1193, which stated in relevant part, "Carl Lewis' testimony... is not evidence that the defendant committed any of the crimes charged against him.

[2] The Ninth Circuit approved the California Court of Appeal's decision in People v. Patino, 26 Cal.App.4th 1737 (1994), holding that the use of CSAAS evidence in a child abuse case does not necessarily offend a defendant's due process rights. Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003) ("[W]e have held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth").

United States District Court
For the Northern District of California

[¶] You may consider this evidence only in deciding whether or not [the victims'] conduct was not inconsistent with the conduct of someone who [had] been molested, and in evaluating the believability of her testimony." (Clerk's Transcript ("CT") at 398.) Accordingly, the state courts' rejection of this claim was not contrary to, nor an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d).

2. Insufficient Evidence

Petitioner's second claim is that there was insufficient evidence to establish "the element of menace, fear, and duress" as to count 2.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, see id. at 324. The Supreme Court has emphasized that "Jackson claims face a high bar in federal habeas proceedings . . ." Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the 3rd Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of Jackson when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993); see, e.g., Coleman, 132 S. Ct. at 2065 ("the only question under Jackson is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality"). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution,

United States District Court
For the Northern District of California

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Payne, 982 F.2d at 338 (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

The Court of Appeal rejected this claim after applying Jackson, 443 U.S. 307:

> A. *Standard of Review*
>
> The standard of review of defendant's claim is well-settled. Under the federal Constitution's due process clause, there is sufficient evidence to support defendant's conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) This test "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Id.* at pp. 318-319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "The court does not, however, limit its review to the evidence favorable to the respondent.... '[O]ur task... is twofold. First, we must resolve the issue in the light of the *whole record* – i.e., the entire picture of the defendant put before the jury – and may not limit our appraisal to isolated bits of evidence selected by the respondent. Second, we must judge whether the evidence of each of the essential elements... is *substantial*; it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "Not every surface conflict of evidence remains substantial in the light of other facts."'" (*Id.* at p. 577.)
>
> B. *Facts and Law Regarding the Sufficiency of the Evidence*
>
> Section 288 provides in relevant part: "(a) Any person who willfully and lewdly commits any lewd or lascivious act... upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.
>
> "(b)(1) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of

United States District Court
For the Northern District of California

> immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."
>
> Thus, as relevant here, to obtain a conviction under section 288, subdivision (b)(1), the prosecution must prove beyond a reasonable doubt that the accused coerced the victim in a manner set forth in the statute.
>
> Defendant used duress and thus has no meritorious claim that there was insufficient evidence of coercion.
>
> As regards section 288, subdivision (b)(1), "'the element of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person is intended as a requirement that the lewd act be undertaken without the consent of the victim.'" (*People v. Bolander* (1994) 23 Cal.App.4th 155, 160-161.) Duress, in turn, includes "'a direct or implied threat of... hardship or retribution sufficient to coerce a reasonable person of ordinarily [sic] sensibilities to... perform an act which otherwise would not have been performed....'" (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)
>
> There was substantial evidence from which a rational trier of fact could conclude that the victim felt coerced to perform sexually gratifying acts on defendant because she feared he would tell her grandmother she had taken or attempted to take money from the bedroom. The molesting acts were not activities a child would ordinarily wish to participate in, and the victim testified that she found the episode unappetizing – she described the encounter as "[w]eird" and scary. No due process violation arises from defendant' conviction on count 2 under section 288, subdivision (b)(1).

(Ans. Ex. 8 at 12-14.)

Petitioner's claim is without merit. He claims that there was "no[] statement or act showing an intent to injure anyone." (SAC at 6.) However, the state appellate court found there was substantial evidence to support the conviction under § 288, subd. (b)(1), because a rational trier of fact could conclude that the victim "felt coerced to perform sexually gratifying acts on [Petitioner] because she feared he would tell her grandmother" that she tried to take money from her bedroom. (Ans. Ex. 8 at 14.) The record shows that she acceded to Petitioner's requests "without wanting to" and that the exchange made her feel "[w]eird" and scared. <u>See</u> <u>supra</u> at 3. Viewing the evidence in the light most favorable to the prosecution, it was more than sufficient to show that Petitioner used duress against the victim in count 2 to

gratify his own sexual desires. See Payne, 982 F.2d at 338. The state appellate court properly applied federal law in rejecting this claim, and their conclusion was reasonable under § 2254(d). Accordingly, this claim is denied as without merit.

3. Statute of Limitations Claim Against Counts 1 and 4

Petitioner's final claim is that the conviction based on counts 1 and 4 were the result of "discriminatory enforcement of the law" as they were barred by the statue of limitations, and the convictions thereon violated his right to due process and right to a fair trial.

The Court of Appeal rejected this claim:

> Counts 1 and 4 charged defendant with violations of section 288, subdivision (b)(1), resulting from acts alleged to have occurred "on or about and between" January 1, 1995 and September 1, 1996 – or in the case of count 1, possibly between January 1, 1995, and October 1, 1996.
>
> Defendant demurred to the information on the basis that these charges were outside the statute of limitations. The prosecution responded that because defendant was charged under the One Strike law (§ 667.61) and thus subject to a sentence of life imprisonment, the charges were authorized by section 799 and were not stale.
>
> The trial court ruled against defendant. It explained: "The issue this [c]ourt must decide is more narrow than whether [section] 667.61, in its entirety, is an 'enhancement' or an 'alternate penalty.' Instead the issue is only whether subdivisions (b) and (e)(5) of [section] 667.61, when operating together, amount to an 'enhancement' or an 'alternate penalty.' While other portions of [section] 667.61 are analogous to the three strikes law and may not extend the statute of limitations under the reasoning of *People v. Turner* (2005) 134 Cal.App.4th 1591[(*Turner*)], the specific [section] 667.61 allegation in this case is more analogous to what is essentially a substantive offense.... As charged here, it has to be established that 'The [d]efendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.' Thus, in this case, and as applicable to [d]efendant, the life sentence would be imposed based entirely on facts and elements proven in this individual case – not on prior convictions... [¶]...[¶] The demurrer is overruled."
>
> Recent California Supreme Court authority establishes that the trial court's ruling was correct.
>
> The maximum punishment for a violation of section 288, subdivision (b)(1), is eight years in prison. (*Ibid*.) An offender who suffers convictions "in the present case or cases" (§ 667.61, subd. (e)(5)) of violations of section 288 subdivision (b)(1), against more

> than one victim is, however, subject to a sentence of life imprisonment. (§ 667.61, subds. (b), (c)(4), (e)(5).) As the trial court noted, the "present case or cases" language is important to a full explanation of why there is no prosecution deadline in these circumstances.
>
> Section 799 provides, as relevant here: "Prosecution for an offense punishable by death or imprisonment in the state prison for life... may be commenced at any time."
>
> Section 805 provides: "For the purpose of determining the applicable limitation of time pursuant to this chapter: [¶] (a) An offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense."
>
> Defendant renews his contention that counts one and four are time-barred under a shorter statute of limitations than section 799, namely section 800, which provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense." In his view, because the maximum sentence for a violation of section 288, subdivision (b)(1), is eight years, section 800's six-year limitations period governs. [footnote omitted.]
>
> Our Supreme Court's recent opinions in *People v. Jones* (2009) 47 Cal.4th 566, and *People v. Brookfield* (2009) 47 Cal.4th 583, make clear that determining whether an offense is punishable by life imprisonment must take into account an alternative sentencing scheme that applies to the offense based on other criminal conduct that the trier of fact has found to have occurred.
>
> ...
>
> We conclude that *People v. Jones, supra*, 47 Cal.4th 566, and *People v. Brookfield, supra*, 47 Cal.4th 583, and the Legislature's intent that more serious crimes be prosecutable farther into the future, mandate that section 799 applies to the prosecution of defendant, and that prosecuting him for his conduct in 1995 or 1996 in counts 1 and 4 was not time-barred.

(Ans. Ex. 8 at 4-12.)

Petitioner's claim is without merit. First of all, to the extent that Petitioner is claiming that the trial court misapplied state law, the claim is not cognizable on federal habeas review. The Supreme Court has repeatedly held that federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. See Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (2011);

United States District Court
For the Northern District of California

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Furthermore, Petitioner's vague assertion that his federal rights were violated is insufficient to state a cognizable claim because he may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

A federal court may, however, re-examine a state court's interpretation of its law if that interpretation appears to be an obvious subterfuge to evade consideration of a federal issue. Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975); see Little v. Crawford, 449 F.3d 1075, 1083 (9th Cir. 2006) (habeas petitioner might have been able to show that state supreme court's interpretation and application of state law was constitutional error if it constituted "a fundamental defect which inherently resulted in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent") (internal quotation marks, brackets and citations omitted)). Here, Petitioner fails to show that there was a defect in the state courts' decisions which resulted in a "complete miscarriage of justice." Id. The state appellate court properly reviewed the applicable state law and state supreme court precedent in denying this claim. There was no "obvious subterfuge" to evade a federal constitutional issue. Mullaney, 421 U.S. at 691 n.11. Lastly, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988). Accordingly, the state courts' rejection of this claim was not contrary to, nor an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d).

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

IT IS SO ORDERED.

DATED: 3/22/2013

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MARIO RENE PEREZ,

Petitioner,

v.

K. ALLISON, Warden,

Respondent.
_______________________________________/

Case Number: CV10-05947 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 3/22/2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Mario Rene Perez G-37655
California Substance Treatment Facility and State Prison
P. O. Box 5246
Corcoran, CA 93212

Dated: 3/22/2013

Richard W. Wieking, Clerk
/s/ By: Elizabeth Garcia, Deputy Clerk